———————o———————

## No. 3918.

### (Court of Appeal, Parish of Orleans.)

### JULIUS C. ROSE vs. B. LAKE HENRY CO.

Issues of fact only are involved herein.

Appeal from Civil District Court, Division "B."

T. B. Walker, for Plaintiff and Appellant.

Wm. A. Collins, for Defendant and Appellee.

DUFOUR, J. In November, 1904, the plaintiff was engaged by defendant by verbal contract as commercial traveler and his first trip having proved successful a written contract was entered into between them on December 31st, 1904.

By it terms, he was to receive for one year from January 1st, 1905, the sum of $1500, payable at the rate of $125 per month, and his obligation was to travel the territory allotted to him, to give his whole time and attention to defendant's business and to hold himself subject to the latter's order at all times.

On April 12th, 1905, he was discharged and he sues to recover his salary from April to December, 1905, both inclusive.

The defense is that plaintiff falsely represented himself as being a man of good business capacity and not addicted to drinking, that he did not give his whole time and attention to the business and did not hold himself subject to their orders, and that on January 25th, 26th, and 27th he was in Birmingham in a drunken condition instead of being on the road selling goods.

The question of want of capacity is set at rest by the fact that on his first trip under the original verbal contract, the plaintiff stayed on the road twenty-three or twenty-four days, sold between $600 and $800 worth of goods at an expense to the firm of about $225; and that his employers declared themselves thoroughly satisfied with his efforts. The tsetimony shows that, when Rose represented that he was not a drinking man, his representation was absolutely true; he had for years belonged to a temperance organization and, when in the employment of the Singer Sewing Machine Co., immediately previous to contracting with defendant, he was known as a man of sober habits.

If defendant desired that the plaintiff should guarantee that he would not drink in the future under the penalty of discharge, they should have taken the precaution of inserting that condition in the contract.

When Rose returned from his January trip, Henry, a member of the defendant company, told Rose he heard he had gambled and gotten drunk in Birmingham. Rose admitted that he had drank too much and said that he arrived there on a very cold day, and that "I (he) took a few drinks too many, went to bed and got up next morning, and attended to his business, and that statement satisfied them."

Henry testifies that he was willing to condone the offence "if it was so small as that" or "a slight character of dissipation;" hence it follows that his objection was not to the fact but the degree of drinking, and, if the dissipation objected to did not interfere with the business, it would appear to have been immaterial from his standpoint.

Defendant by commission secured the testimony of the bar tender and porter or bottle washer of the Hotel at which Rose

stopped in Birmingham to prove that, on the 25th, 26th and 27th of January, Rose was so drunk that he did not know what he was doing and was unable to attend to any business.

Their testimony is too circumstantial and precise as to hours and other details and appears to prove too much, when it is recalled that they testified nearly six months after the occurrence to which they testify.

In contradiction, we find the testimony under commission of several merchants and clerks in Birmingham who saw and conversed with Rose on one or the other of the three days in controversy, and who say that he was sober.

Rose's statement that he did endeavor to secure business is not impeached, and it seems quite plausible, as he states, that his failure was due to the failure of the crops and consequent scarcity of money, then to the fact that some dealers had already bought their goods and others preferred to wait until their later purchasing trips to the east.

A significant corroboration is found in the fact that, when he took another trip after the Birmingham episode, the financial result was no better, although it is not denied that he was sober, and it is not shown that he neglected his work.

There is no foundation for the complaint that he refused to obey orders his letters of January 27th explains fully his reasons, and it is clear that defendant made no point of this, until their determination to discharge him arose, at which time this complaint came as an afterthought to fortify their reasons for a discharge.

The testimony in respect to the crucial point—the Birmingham episode—was not heard by the district judge, and we are in as good a position to appreciate it as he was.

We have risen from the examination of this record with the conviction that the plaintiff was discharged without serious grounds of complaint, as required by C. C. Art. 2749, and that he is entitled to receive his salary for the rest of the term of his contract.

We may add that a probable, though unavoidable reason for the discharge, is to be found in the fact that defendant's came to the conclusion that the contract they had made was more

expensive and less renumerative than they expected, and they welcomed any chance of ridding themselves of their burden.

. This, the law will not sanction.

Judgment amended by increasing the judgment in favor of plaintiff and against defendants from the sum of $125, to the sum of $1125, and as amended, the judgment is affirmed, at defendant's cost in both Courts.

April 26, 1906.

Rehearing refused May 14, 1906.

Writ refused by Supreme Court June 25, 1906.